UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANGEL RIGOBERTO TORRES,

                Plaintiff,

                                     17-CV-5425 (SIL)

      -against-

NEW HIGH TECH CAR WASH & LUBE, INC.    **MEMORANDUM OF**
and DAVID BARAM, as an individual,        **DECISION AND ORDER**

                Defendants.
----------------------------------------------------------------X
**STEVEN I. LOCKE, United States Magistrate Judge:**

The following constitutes the Court's Fed. R. Civ. P. 52 Findings of Fact and
Conclusions of Law in this age discrimination case brought pursuant to the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and New York
State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, *et seq.* after a bench trial
conducted on January 23 and 24, 2023.

## I.    FINDINGS OF FACT

In 1997, Plaintiff, Angel Rigoberto Torres ("Torres"), at age 51, was hired by
Defendant New High Tech Car Wash & Lube, Inc. in Garden City, New York ("High
Tech") on an at will basis as an "oil changer," performing oil changes and replacing
transmissions, a job he held until his termination in July 2016 at age 71.   *See*
Complaint, DE [1]; Answer, DE [13] (admitting to certain relevant facts); Trial
Transcript, DEs [72-1], [72-2] ("TT") 14, 59-61; Deposition Transcript of Angel
Rigoberto Torres, Oct. 4, 2018, DE [72-3] ("DT") 11, 13-14, 38.[1] The job did not require

---

[1] The parties stipulated at trial that the party deposition transcripts would be admitted as evidence.
*See* TT 70.

any customer interaction, which was appropriate as Torres speaks no English.  TT 62-63; DT 6, 9, 32.  Plaintiff earned between $480 and $550 per week.  TT 43.

Throughout his employment, High Tech was owned and operated by Defendant David Baram ("Baram"), who also had authority over personnel and to hire and fire and set payroll.  TT 157-60.  High Tech had between 25 and 35 employees, at least one of whom was employed at the adjoining car wash, Samuel Ayala, and was older than Plaintiff.  TT 14, 62, 160-61, 179-80.

When Torres was first hired, he had problems with his manager, but this changed when he was moved to a different area.  TT 12.  He started at six days a week, which went to five days a week several years later.  TT 12-13.

In 2014 or 2015, a new 35 or 36-year-old manager Frank Mejia ("Mejia") was hired.  TT 15, 17.  Mejia was responsible for supervising all of the employees, including Plaintiff.  TT 16.  At first, Torres's relationship with Mejia was good, but it worsened over time due to performance issues.  TT 16, 27.

Initially, Mejia told Plaintiff that customers were complaining about his (Torres's) work.  TT at 18-19, 114; DT 64.[2]  Mejia would get "frustrated" if there was anything wrong with a car and "get mad" at Plaintiff, sometimes leading to verbal exchanges or disputes, and Mejia was constantly upset because Torres was not servicing cars quickly enough.  TT 76-78, 82 ("Q. So you agree with me, Mr. Torres, that you had verbal disputes and disagreements and that you fought with Frank

---

[2] Although Plaintiff challenges whether these complaints were actually made because no customers complained directly to him, *see* TT at 18-19, the Court gives this little weight as Plaintiff admitted that the protocol was that the manager took the complaints and then spoke with the offending employee(s).  TT 24, 110-11, 113.

Meija every once in a while, correct?" [overruled objection] "A. Yes."), 94, 131-32. Moreover, on one occasion Plaintiff damaged a corvette that cost Defendants $1,450 to repair, and prior to that he damaged a jeep, costing Defendants $400.  TT 166-67.

In addition, Torres was intoxicated at work on more than one occasion.  TT 167-68.  Although Plaintiff initially denied having a drinking problem during the time he worked for Defendants, TT 66, he modified his testimony to state that he was never drunk at work, TT 73, after being confronted with his deposition testimony where he admitted to drinking too much.  DT 22 ("Q. Would you say that you were drinking too much up until four to five months ago [mid-2018 after his termination]?  A. Yes.").  In fact, consistent with this problem, Plaintiff was convicted in 2001 of attacking his son-in-law with a knife while he was intoxicated.  DT 16, 18, 20-21.  Torres was sufficiently drunk during this incident that he does not recall what happened, but he learned afterwards that his son-in-law had to be taken to the hospital.  DT 21.  In any event, Defendants' testimony on this point was credible, while Plaintiff's was not.

Also, at some unidentified point in time, Torres admits that he was having problems with his vision, eventually requiring surgery, which caused him to slow down at work, such that he could not keep up with the volume, resulting in criticism that he should be working faster.  TT 30, 90-92.  Torres also conceded that "there were . . . complicated jobs that had to be done that due to [his] age it was hard for [him] to do," and this " was stressful" for him.  TT 92-93.  According to Torres, this

led to his complaints about inadequate lighting at his workspace which Mejia was slow to fix, such that Torres occasionally bought lamps himself.  TT at 31-32.[3]

These performance problems were not what caused Plaintiff's termination, however.  Rather, on the discharge day, Baram, who is older than Plaintiff, responded to a ruckus he heard at the oil change.  TT 173-74.  When he arrived, three different employees told him (Baram) that Plaintiff had thrown a bunch of tools at Mejia and came at Mejia with a knife.  TT 173-76, 200, 204-05.  This is the reason Plaintiff was fired.  TT 215 ("I fired him because he pulled a knife."), 218 (Q. "So you decided it would be Mr. Torres that has to go because of the complaints that were coupled with this?  A. No.  I decided to let him go because he pulled a knife."), 219.  During this incident Baram noticed that Torres smelled of alcohol and sent him home immediately.  TT 174, 177, 183; DT 38.[4]

In making these findings of fact, the Court acknowledges and rejects as incredible Plaintiff's uncorroborated testimony that he was the subject of constant agist remarks.  By way of example, Torres testified that the first time Mejia relayed a customer complaint about work he did on a car, Torres denied it, and Mejia replied "[Y]ou are too old.  You are too old." TT 20; *see* TT 27 (after about six months on the

---

[3] On cross-examination, Baram testified that Defendants did not keep written records of Plaintiff's performance issues.  TT 185.  The Court finds that this lack of performance documentation to be irrelevant.  Initially, the Court accepts Baram's testimony that the business kept no performance records for any of its employees.  This alone does not cause the Court to reject otherwise creditworthy testimony.  More significantly however, as explained below, these performance issues were not the reason for Plaintiff's termination.

[4] Although Plaintiff denies bringing a knife to work and tried to undermine Baram's trial testimony by pointing out that Baram never called the police as the result of the incident, the Court credits Baram, who was credible at trial throughout his testimony, and accepts his explanation that he did not want to see Plaintiff, a 20-year employee, prosecuted.  TT 225.

job Mejia would tell Plaintiff he was "too old"), 29 ("You are too old.  You are retired already.  You are retired."), 33.  He also claimed that other unnamed coworkers made similar comments because "[t]hey wanted to get [Plaintiff's] job" despite that there was no evidence that indicated Torres's job was more desirable than any other.  TT 27-28, 35.  Plaintiff claims that these comments started only after Mejia arrived and occurred everyday throughout the day.  TT 28, 29.  Despite the fact that these statements were allegedly made daily—two to three times a day, and that the workspace was open, there were no witnesses to any of these statements.  TT 20-21.

Then, according to Plaintiff, one day Mejia told him that he would work until Saturday, after which he was fired.  Then on Saturday, Torres met with Mejia and Baram who told him that he was fired because he was "too old."  TT 38-39.  No other reason was given.  TT 39.  This is the only time Baram told Plaintiff that he was too old.  TT 86, 90.

The Court rejects all of this testimony for several reasons.  Initially, Plaintiff's demeanor on the stand was not credible.  Further, at several junctures, he gave self-serving testimony, which he changed only after being confronted with his contradictory deposition testimony, such as when he denied ever having a drinking problem, only to admit that point when shown his deposition testimony.  More importantly however, despite testifying that Defendants told him directly that he was being fired because he was too old, he testified to the contrary at his deposition that Defendants told him that he was fired due to customer complaints, DT 63, and he only learned that he was discharged because of his age from a co-worker, Ricard Del

5

Valle ("Del Valle"), who was fired shortly before Plaintiff, and who Torres failed to call as a witness at trial. *See* TT 120-21; DT 67-68. For all of these reasons the Court declines to credit any of Torres's testimony connecting Plaintiff's termination to his age.[5]

In any event, as the result of his termination, Torres testified that he was humiliated and unable to take care of his ailing wife, a problem that became more difficult during the pandemic, though he never sought or obtained any type of medical or other treatment as a result. TT 40-41, 118-19. Although he looked for alternative employment, he could not find any, other than some occasional work. TT at 43-44.[6]

## II.   CONCLUSIONS OF LAW

### A. Standard of Review

At a bench trial in a civil case, the plaintiff maintains burden of proof to prove each of the elements of his claim by a preponderance of the evidence. *Hoover v. Wilkie*, 11-CV-734F, 2020 WL 108423, at *9 (W.D.N.Y. Jan. 9, 2020) (citing *Wilson v. Calderon*, 367 F. Supp. 3d 192, 195 (S.D.N.Y. 2019)); *Torres-Cuesta v. Berberich*, No. 08-CV-1382 ARR LB, 2011 WL 3298448, at *11 (E.D.N.Y. Aug. 1, 2011), *aff'd*, 511 F. App'x 89 (2d Cir. 2013). This preponderance-of-the-evidence standard means that when the evidence as to an issue is evenly balanced, the party with the burden of

---

[5] In reaching this conclusion, the Court acknowledges that Baram admitted that on one occasion he heard employees joking about Plaintiff's age in relation to his sex life. TT 190. Without going into detail, there was no evidence connecting this conduct to the termination decision, and so the Court disregards it.

[6] Finally, the Court notes that there was some questioning implying that the New York State Division of Human Rights issued a probable cause finding after it investigated Plaintiff's discrimination claims before that agency. *See* TT 49-57, 242-43. This determination was never marked or admitted into evidence however, and so the Court cannot consider it.

proof on that issue loses. *United States v. Gigante*, 94 F.3d 53, 55 (2d Cir. 1996); *Hoover*, 2020 WL 108423, at *9; *Berberich*, 2011 WL 3298448, at *11  Where the testimony is in conflict, it is the province of the district court to determine whose testimony to credit. *Tutt v. Moody*, 18-CV-324 (JMA)(ARL), 2022 WL 17976820, at *3 (E.D.N.Y. Dec. 28, 2022) (quoting *Krist v. Kolumbos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) ("[A]s trier of fact, the judge is entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness."); *see Clayton Servs. LLC v. Sun West Mortgage Co., Inc.*, 22-511, 2023 WL 2781294 (2d Cir. Apr. 5, 2023) (summary order); *Hoover*, 2020 WL 108423, at *9 (credibility and reliability testimony are determined by the district court).

## B. Age Discrimination

Among its provisions, the ADEA bars an employer from discharging an employee because of age. *See* 29 U.S.C. § 623(a); *McCarthy v. New York City Tech. College*, 202 F.3d 161, 165 (2d Cir. 2002); *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984). Proof of age discrimination may be in the form of direct evidence, such as statements by the employer that age was the reason for the discharge, or by indirect evidence originally outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973) and later extended to ADEA cases. *See D' Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007); *Carr v. New York City Transit Auth.*, 16-CV-9957, 2022 WL 824367, at *8 (S.D.N.Y. Mar. 18, 2022); *Marcus v. Leviton Mfg. Co.*, No. 15CV656SJFGRB, 2016 WL 74415, at *2 (E.D.N.Y. Jan. 6, 2016), *aff'd*, 661 F. App'x 29 (2d Cir. 2016). To

establish a prima facie case of age discrimination, a plaintiff most show membership in a protected age group, that he was qualified for the position at issue, an adverse employment action, and circumstances giving rise to an inference of discrimination. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)); *D'Cunha*, 479 F.3d at 195; *Carr*, 2022 WL 824367, at *8. If the plaintiff can establish a prima facie case, the burden shifts to the defendants to articulate a non-discriminatory reason for the adverse employment action. *D'Cunha*, 479 F.3d at 195; *Carr*, 2022 WL 824367, at *9; *Marcus*, 2016 WL 74415, at *2. If the defendants meet this burden of production, then the plaintiff must prove that the defendants' explanations are pretextual, such that the real reason for the adverse action at issue is age-related. *D'Cunha*, 479 F.3d at 195; *see Marcus*, 2016 WL 74415, at *2-3. The discrimination must be the "but-for" cause for the adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 129 S. Ct. 2343, 2350 (2009); *Spencer v. United Parcel Serv.*, 354 F. App'x 554 (2d Cir. 2009) (summary order); *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011). NYSHRL age discrimination claims are considered under the same standards. *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (summary order) ("NYSHRL claims are treated the same as ADEA claims . . . ."); *Alexander v. City of New York*, 19-cv-7023 (AJN), 2020 WL 7027509, at *3 (S.D.N.Y. Nov. 30, 2020); *Clarke-Green v. New York City Dep't of Educ.*, No. 17CV778RRMVMS, 2019 WL 13149583, at *6 (E.D.N.Y. Mar. 20, 2019).

Here, Plaintiff's age discrimination claims fail.  The Court accepts Defendants' testimony that Torres was fired because the owner, Baram, reasonably believed that Torres attacked Mejia with a knife, conduct for which Plaintiff was already once convicted after attacking his son-in-law years earlier.  The Court found this testimony credible.  In this regard, the Court rejects Plaintiff's testimony that he was subject to comments about his age two to three times a day and then told he was being terminated because of his age.  Initially, Torres's demeanor on the stand was not credible.  Moreover, his testimony was uncorroborated despite his statement that a co-worker, Del Valle, knew about the discrimination but was not called as a witness at trial.   Further Plaintiff's testimony about the alleged discrimination was inconsistent, asserting at trial that Baram and Mejia told him that he was being fired because of his age, while at deposition saying that he was told that he was terminated for poor performance and that Torres learned he was discharged because of his age later from Del Valle.  Finally, the Court notes that Plaintiff's testimony concerning his drinking problem also changed between his deposition and trial.  Once the totality of this evidence is weighed, and Torres's testimony is rejected, Plaintiff in unable to establish, either through direct or indirect evidence that his age was the "but for" cause of his termination, and his claims against Defendants under both the ADEA and NYSHRL are dismissed.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's age discrimination claims against Defendants are dismissed, and the Clerk of the Court is directed to enter judgment accordingly and close the case.

Dated:      Central Islip, New York
            June 8, 2023           **SO ORDERED.**

                                    /s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge